21-2762. Again, feel free to, when you do get up here, adjust the podium and get the microphones all set. We won't start the clock until you're all ready. Thank you, Your Honor. Mr. Silverman? And I understand you would like to reserve three minutes for rebuttal? Yes, Your Honor. Thank you. Thank you. Very good. Please proceed. When it imposed a special condition of supervised release, essentially barring Jacob Leonard from viewing lawful adult pornography for the rest of his life, the district court did not make any specific findings, much less the detailed findings on the record that this court required in United States v. Eaglin. The record consists primarily of a psychosexual report commissioned by defense counsel that was not rebutted by the government that describes Mr. Leonard as manageable in the community and an average, which is below 10 percent, risk of reoffending within five years, and he's serving a 300-month sentence. This court has stressed that when banning First Amendment-protected materials, even for offenders convicted of crimes like this, detailed findings are necessary relating the condition both to the 3553A factors and to explain why it's no greater than necessary a deprivation of liberty, and that just did not happen. The government basically concedes error, but argues that it's self-evident in the record why the condition was imposed. The self-evident— That's because I understand the plain error standard of review applies here, because there was no objection below? Yes, Your Honor. And you agree that that's the standard of review, at least? You would argue that you satisfy that? Yes, Your Honor. And I think the government concedes that there's error that was plain under Eaglin. This court has referred—although the next two steps under plain error would be substantial rights and integrity of the courts—this court, in reviewing these kinds of supervised release conditions, has reverted or imposed a self-evident standard, and in Williams, it described that as a standard of when the record compels the conclusion that it's appropriate. Notably, simply having someone accused of these kinds of offensives does not make it self-evident. Otherwise, Eaglin would have no meaning. And so there has to be something more, and the Williams court talked about requiring some kind of history of deviant or unlawful behavior regarding adults. And the record just doesn't reflect that that exists at all in this case. And I understand that this is not a particularly enjoyable subject matter, but what the government relies on is the psychosexual reports list of general characterizations of certain risk factors, and its description at CA-25 of general characterizations of one of those risk factors that does not apply to Mr. Leonard, and is not included in its description of Mr. Leonard. So not only were there no findings on the record, and not only does the record not compel the conclusion that this was an appropriate special condition, the record doesn't even support that it was an appropriate special condition. In addition, Mr. Leonard's plea should be withdrawn, as he has expressed through counsel he would like, because there was a clear Rule 11 violation, and that he was not advised during the Rule 11 colloquy, and was not asked whether he understood that he had a right to counsel at all stages of the proceeding. He did have counsel at all stages, didn't he? I'm sorry, Judge Fuller? He did have counsel at all stages, though, didn't he? He had counsel, although two things, and then I'll address Judge Nardini's question about the magistrate judge. But with respect to counsel, it's true. At A-76 in the appellate appendix, counsel stated that he had advised his client of all of his rights. But notably, two pages earlier at A-74, when he was asked by the district court whether he understood the exposure that he was facing on the plea, Mr. Leonard answered in the negative that he did not, suggesting that there was some less than perfect communication, despite counsel's representation. Further... And what did the district judge do when he said, I'm not sure I understand that? Did he direct them to talk to his attorney? No, Your Honor. And the reason that we don't hang our hat on that as a basis to withdraw the plea is that elsewhere he said that he did. So the record is unclear. But it suggests that the communication might not have been perfect. And with respect to what the magistrate judge says, three points about that. First, unlike the cases that the government relies on, what the magistrate judge said in this case was that you have a right to counsel at all critical stages of the proceeding. But that could be heard as the exact same error as was in the Rule 11 colloquy at the plea. Because at the plea here, you have a right to counsel at trial. And if you previously heard critical stages without critical being defined, this is not someone who's a lawyer, this is a military veteran, you might think that they mean the same thing, that you have a right to counsel at trial, but not otherwise. In addition, this was a phone arraignment. Unlike an ordinary in-person arraignment, it lacked even an indication by the judge that Mr. Leonard was nodding his head. And of course, he was not asked if he understood this right as he would at a Rule 11 colloquy. And finally, at CA4, it's noted, and again unrebutted, that this is someone with head trauma and therefore memory deficits. And so something that he was advised a little over a year before his plea is not necessarily something that he would remember one year later, particularly when that advice was in a non-in-person phone communication with the court. That's why Rule 11 sets forth these standards. Do you counsel attempt to show prejudice? That is, he wouldn't have pled if he was informed of all his rights? Yes, Judge Poole. So I think this is a very interesting issue. And I have to say, it might be something the court would want to clarify. Because the government correctly points to cases saying that just putting in an affidavit to this court is insufficient. And it's hard to dispute that. I would never advise a client that the right thing to do is to put in new evidence on appeal. But where you have the record that there was no advice below, he therefore had no opportunity below to withdraw the plea. And so if fact findings need to be made about whether or not he would have been willing to, then perhaps the right thing to do is a Jacobson remand, because fact findings would need to be done below. I don't disagree with the government that simply putting in an affidavit sworn by my client would be insufficient, as it would be new evidence on appeal. But otherwise, it's totally unclear what he's supposed to do to meet that standard in this kind of case, where he had no opportunity to make the motion below. You've reserved, let's see, you've reserved three minutes. So we'll see you again shortly. Mr. Silver, for the government. Thank you, your honors. May it please the court. I'd like to address the last thing that my adversary said, which is the defendant had no opportunity to withdraw his plea in the district court. I mean, that's not true. At any time after the plea was taken, through sentencing, through review of the pre-sentence investigation report, anything that the defendant may have been dissatisfied with, he couldn't. But his argument is, is that the defendant was not properly sure of all his rights. And therefore, there wasn't a moment when he said, aha, now I want to withdraw my plea. Well, as we've pointed out, and my adversary has discussed with the court already, at the initial appearance, the defendant was advised slightly differently from the requirements of Rule 11, that there was a right to counsel at all critical stages of the proceeding. He had counsel at all stages of the proceeding. At the change of plea proceeding, defense counsel advised the district court that he had advised the defendant of his rights, that he was giving up. So there's really, I can see the error in the Rule 11 colloquy. There's no dispute about that. But the question is, under plain error review, did that affect the defendant's substantial rights? And in the plea context, that has been interpreted by this court to mean, is there a likelihood that there would have been a different result? Meaning, would the defendant have moved, would not have entered his guilty plea, had the error not occurred? So counsel, can I just ask you about the plea agreement? Because we get these kind of cases a lot, where a judge doesn't quite track the language of Rule 11. We're asked to determine whether the error was harmless. And usually the first thing I do is I turn to the plea agreement, because most plea agreements that I've seen track everything that's listed in Rule 11, and that way you have a backstop. So if you have a district judge that at a minimum asked the defendant, have you read the plea agreement? And they say yes, and they ask the defense counsel, have you talked about and reviewed the plea agreement with your client? Yes, and you go over and say, now do you both understand the plea agreement and all that? If all the Rule 11 rights are laid out in there, you have a backstop to ensure that even if the district judge misspeaks, you can be fairly confident that the defendant has been fully advised of the rights. And here, it's just not in here, and I'm kind of curious, is that a regular practice of your office, to not have all the Rule 11 rights in the plea agreement? And is this typical? I don't know. I believe the plea agreement that was used in this case is a standard plea agreement. I've never seen this, and the defendant has a right to- Standard in the northern district, you mean. Standard in the northern district. Yes, Your Honor. And I've never seen this before. The defendant has a right to assistance and counsel in a connection with the settlement of this case. I've never even heard that language in a criminal context before. Look, all I guess I'm saying is, when I look to the plea agreement for what I thought would be the logical place to ensure that the defendant's rights had been protected, it wasn't there. And it may be something that would be something to consider, because if we're trying to make sure defendants know what their rights are under Rule 11, the primary responsibility is obviously with the court during the canvass of Rule 11. But I would think that the government would be trying to take steps to ensure that that notice is being provided in multiple ways. Almost verbatim, what you have just discussed, I have relayed to the appellate chief. I know that the appellate chief relayed that information to an AUSA in our office, who had a large hand in drafting the plea agreement. And I also took all of the information- Is this the version that you're still using? Is this the version of the plea agreement that the Northern District is still using? There is, to my knowledge, it has not been changed. But I also- Let's make sure that the supervisors in your office listen to the transcript or the recording of oral argument today. I'm sure they will, your honor. Thank you. And I also forwarded the information to the chief of the criminal division for exactly the reason that you say. Now, my assumption is, and it is just an assumption, is that when the language in the plea agreement was utilized, it was meant to encompass everything that goes to the settlement of the case. But I share your concern, your honor, and I've raised it in my office as best I could. Could you talk about the condition of supervisory release? I think that you relied on the line in the confidential appendix. And I guess one question I had is, is that something that the district court referred to at the time of sentencing, in relying as something upon which it was relying when imposing this condition of release? The court indicated that it had considered the submissions by the parties. Obviously, this was one, but the court did not refer expressly to the report. And if this, hypothetically, we were to send this back to the district court for an articulation of reasons, either to decide to either drop the condition or articulate reasons why this particular condition needs to be imposed, that's something that could be taken up by the district court on remand, right? Absolutely. But I think the reasons for imposing the condition are self-evident in the report. The report is designed to make an assessment of the likelihood of recidivism by the defendant. In doing so, the expert that was utilized by Mr. Leonard, not by the government, indicated that Mr. Leonard had, quote unquote, some problem with sexual self-regulation. The expert also indicated that some risk factors that relate to a defendant's- I'm sorry, what page is that? That is CA 24. If you're referring to some problem with sexual self-regulation, that's on CA 24. I guess, let me check myself. I'm not seeing that language. It is at the bottom of page CA 24. So there's, this is an interesting report here, because really what it is, the vast majority of this report has nothing to do with this defendant. It's a form, right? That's not true, Your Honor, respectfully. Well then, let me finish explaining why I think that, and then you can tell me why I'm wrong. It looks to me, for example, this category of sexual self-regulation, and I'm going to limit some of the references to it because this is sealed, but it has a header. And it imposes this term, some problem, which is, I believe, designed to respond to this defendant, right? This- Yes, Your Honor. Beginning at the beginning, this item focuses on, in the report, right? There's a lengthy discussion of generically, what do I mean by sexual self-regulation? And then a few lines about Mr. Leonard. So this report is a little unusual in that the vast majority of the discussion appears to be part of the form. And there's a very minimal commentary on Mr. Leonard's own circumstances. Well, respectfully, Your Honor, I don't know what more is needed. Well, that's, I'm not, well- But let me point out to you, if I may, or I am, I don't mean to cut you off, I apologize. Go ahead. Thank you, Your Honor. At the end of that section, the expert says that Mr. Leonard has described that he experienced a preoccupation in seeking ways to gratify his sexual urges. So that's in there, as well as the history that Mr. Leonard reported, which is that he viewed pornography frequently, particularly at times when he was experiencing marital stress. So I don't know what more needs to be said by the expert to tie the general characteristics to what Mr. Leonard reported. I would add to that information that was in the pre-sentence report, which is that Mr. Leonard expressed a sexual fetish that crossed between children and adults. I'm sorry, where do we find that part in the record? That's at the pre-sentence report, paragraph four, I'm sorry, that's the wrong spot. May I have a moment, Your Honor?  I'm sorry. Okay, in the pre-sentence report, paragraphs 20 and 84, there is a reference to Mr. Leonard's sexual- Yeah, I see that, paragraph 20. Yes, and 84, I believe as well, Your Honor. And his interest in that fetish is also referenced in paragraph 14 of the pre-sentence report, where he indicates to the undercover officer, who he believes is an adult woman, that she and the victim in the case could wear underwear in the house, and we could see how the victim likes that. But the point being that his sexual interest is not limited to children. So what you're saying is that he could have put reasons on the record. The district court could have put reasons on the record, but they existed, and he could have stated. I agree with you, Your Honor, that the district court erred under Betz. Well, I'd like to talk about that. We say the district court erred, but there's a prosecutor standing in the courtroom when he imposes this sentence, isn't that correct? Yes, Your Honor. And England was decided in 2019, isn't that correct? I'm not sure of the date, Your Honor, but I was there when it was argued. It was decided in 2019. Why doesn't the prosecutor say, Your Honor, would you like to put some reasons on the record for opposing this lifetime ban? This is something that is discussed in our office frequently, Your Honor. We do try to fill in the gaps that might be created. Well, it's not just trying. I mean, this is your job, to make sure the plea agreement is adequate. Well, yes. But otherwise, you wind up here, Mr. Silver, trying to explain why it's not. Not that we might see you all. It's my pleasure, Your Honor. Yes, more could have been done, more should have been done, Your Honor. But under plain error, I don't think there's any need to remand. Is there such a case in which the underlying offense of conviction is child pornography related where an adult pornography, I mean, can you see that being possible? That you couldn't, and so you, that's possible, right? We know that. Yes. Okay. So your argument has to be that these tidbits in the record are sufficient together with the district court sort of standard statement that we all say, that we've reviewed the entire record and we've considered everything, that those little pieces and that statement are sufficient together to justify this, that's the sum and substance of the argument, right? The only thing I would add to that, Your Honor, and I think it's essentially, I agree with you, is that the district court said with respect to all of the special conditions imposed that they relate to the history and characteristics of the defendant, which is true here, and that they relate to his need for rehabilitation, which is confirmed by the report. All right, thank you very much. Thank you, Your Honor. Mr. Silverman, you've reserved three minutes for rebuttal. Thank you. First, Judge Nardini, I thought your point about what's there and what's not in the plea agreement was very important because even though espressio unius is not a canon of plea agreement interpretation, the same principle applies that when you delineate a bunch of rights, it would lead someone to believe that what's not there is not there for a reason. And by contrast, the plea agreements in the southern and eastern districts of New York do not attempt to delineate all of these rights, and so would not create as misleading an impression. In this case, it just creates further circumstantial evidence as to someone not being correctly advised of the full scope of the rights at any stage. And I also note that this court has imposed what it describes as a policy of strict adherence to Rule 11, which makes sense because the whole purpose of- Well, but that's only for finding error, and we're all in agreement that there was an error. Not strict goes to whether there's prong one satisfied, not to whether substantial rights have been affected. That's a different question. Yes, Your Honor, and I think that's exactly right. And one thing that I did not hear articulated by the government, because I don't think there is a clear articulation, is how someone is supposed to demonstrate substantial rights in this case based on this record. Based on their standard. The government at page 18 of its brief, as it did today, characterizes the substantial rights analysis as folding into whether or not he would have withdrawn the plea. But if he's not fully advised until after the case is closed, there is no opportunity. Yes, theoretically he could have put in a motion at any time, but the point is he didn't have the information or the full advice that would have prompted him to. And so on a record like that, there's no way that I'm aware of, absent remand, that he could possibly meet that showing. And again, that's not just the standard for showing that he would have withdrawn it, but that is, the government argues, the entire substantial rights analysis as well, which Your Honor points out is what's doing the work here in terms of what's at issue on this appeal. Finally, with respect to the special condition, I note a couple of things. First, at A120 and 121, the district court noted that there's no evidence that this person ever was physically harmful to children. The quote from the PSR that's also in the government's brief about an underwear fetish, as I read it, is saying that he has an adult underwear fetish. There's nothing illegal about that. The point for imposing these standards is there has to be some history of, this court has used the word deviant, or you might say unlawful behavior with respect to adults, not just fetish behavior or something other than the most plain vanilla. That's not the standard for imposing a lifetime ban on interaction with First Amendment material. Yes, Your Honor. Counsel, just as I inquired of Mr. Silver why the prosecutor didn't say anything about there be no reasons. Eaglin was decided in 2019, and he had a lawyer standing next to him who didn't say, Your Honor, there are no reasons for this lifetime ban. Isn't that correct? Yes, Your Honor, and that's why he has to meet the four prongs of the plain error standard. I understand, I understand. Thank you. Thank you, Your Honor. Thank you both, very helpful. We will reserve decision.